383 So.2d 742 (1980)
Wade WILKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 77-2169.
District Court of Appeal of Florida, Fourth District.
May 14, 1980.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mary E. Marsden, Asst. Atty. Gen., West Palm Beach, for appellee.
*743 DOWNEY, Judge.
Appellant was found guilty of possession (Count I) and sale (Count II) of cocaine and sentenced to 25 years on Count II as an habitual offender.
It is contended by appellant that the trial court erred in: 1) overruling appellant's objection to prosecutorial comment regarding appellant's prior convictions, 2) allowing prosecutorial comment regarding appellant's exercise of the right to postpone making an opening statement, and 3) instructing the jury that the maximum penalty appellant could receive was 15 years, when the court knew the State intended to seek to have appellant sentenced as a habitual offender with a possible maximum sentence of 30 years.
The evidence showed that appellant had been convicted of a crime seven times. During closing argument the prosecutor stated:
Here's a man, seven times prior been convicted of a crime, who takes the stand and tells you he's an innocent, law-abiding citizen, who doesn't know anything about this black man who approached him on two occasions [about drugs].
Appellant contends the prosecutor was trying to use the evidence of previous crimes to show appellant's propensity to commit crime. Of course, one view of the evidence does tend to show that, as does any proof that a defendant on trial has been previously convicted of multiple crimes. However, the argument is also consistent with an attack upon appellant's credibility, an attack which was entirely proper. Consequently, we find no error on this point.
With regard to the next point, the prosecutor argued that appellant had reserved his opening statement until after the State's case was concluded in order to develop a theory of defense to counter the evidence the State had presented. Then in his opening statement appellant contended he had been entrapped. The prosecutor then presented the query, if the defense were really entrapment, why did the appellant spend so much time cross-examining the chemist as to whether the alleged contraband, allegedly possessed and sold by appellant, was cocaine? We have studied the remarks complained about and fail to find any fundamental error involved. Since appellant did not object to the comments at the time they were made, we need consider them no further.
Finally, appellant suggests the trial court erred in charging the jury that the maximum penalty appellant could receive was 15 years, when at the time the court was aware the State intended to seek an enhanced sentence under the habitual offender statute. Appellant relies upon Stern v. State, 296 So.2d 549 (Fla. 3d DCA 1974), wherein it was held that it was error to instruct the jury that, upon conviction of the charge of second degree murder the maximum penalty was 30 years in the State penitentiary because as a habitual offender he could be sentenced to life imprisonment. The appellant (who was tried on a first degree murder charge) argued that the instruction misled the jury, which, had it known of the possible life sentence for second degree murder, might well have found him guilty of an even lesser offense than the offense for which it convicted him (second degree murder).
In the later case of Nappier v. State, 354 So.2d 929 (Fla. 2d DCA 1978), the court refused to follow Stern for three reasons:
1) To advise the jury of the possibility of an enhanced sentence because appellant had been convicted of multiple other crimes would require the court to improperly reveal to the jury that appellant had been convicted of other crimes.
2) The Nappier trial judge instructed the jury that the determination of the extent of punishment rests exclusively within the discretion of the trial judge, not the jury.
3) The habitual offender statute, Section 775.084, Florida Statutes (1975), requires that a separate proceeding be conducted to determine whether, for the protection of the public, it is necessary to sentence the defendant to an enhanced term. Thus, when the trial *744 judge is instructing the jury regarding the possible penalties if the defendant is convicted, the judge does not know whether the defendant will, in fact, be determined to be a habitual offender in the subsequent proceeding.
The Supreme Court of Florida granted certiorari as a result of the conflict between Stern and Nappier and approved both "the rationale and holding" of the Second District's Nappier decision. See Nappier v. State, 363 So.2d 803 (Fla. 1978). Appellant contends Nappier could be distinguished on its facts, but we disagree. The first reason relied upon in Nappier may or may not be applicable in every case. For example, in the case at bar the jury already knew of appellant's seven prior convictions. However, the second and third reasons are always valid; and we believe the third reason, standing alone, is sufficient to make the Nappier rule preferable. Finally, the Supreme Court in Nappier did not just approve the Second District holding based upon the facts of that case; it also approved the rationale underlying the holding. Accordingly, we find no merit in appellant's third point.
For the foregoing reasons we affirm the judgment and sentence appealed from.
AFFIRMED.
ANSTEAD and MOORE, JJ., concur.